IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**FELIPE GOMEZ-ENCARNACION,**<br><br>Defendant. | Crim. No. 14-0754(DRD) |

**OPINION AND ORDER**

### I. BACKGROUND

Pending before the Court is Defendant Felipe Gomez-Encarnación's ("Defendant" or "Gomez") request for the Court to revisit the determination of the Honorable U.S. Magistrate Judge Marcos E. Lopez, entered on December 30, 2014 (Docket No. 69) after conducting a Bail Review Hearing, denying bail.

On December 18, 2014, the Grand Jury handed down a two count indictment (Docket No. 3) against Defendant charging several drug and money laundering violations. Count Two of the indictment charges Defendant with possession with the intent to distribute a controlled substance under 21 U.S.C. § 841(a)(1) while Count Four charges Gomez with money laundering under 18 U.S.C. § 1956(h).

In denying Defendant's bail request, the Magistrate found that: (1) there was probable cause to believe that Gomez had committed an offense under 21 U.S.C. § 846, 841; (2) Gomez had

1

failed to rebut the presumption that no condition will reasonably assure the safety of the community; and (3) there is a serious risk that the Gomez will endanger the safety of another person or the community. *See* Docket No. 69.  In arriving at this determination, the Magistrate Judge relied on the alleged facts that Defendant was the owner of a drug point in Vieques, that he was seen unloading large quantities of drugs into a boat, that Defendant was recorded on two occasions explaining how to load and transport drugs on the Vieques ferry and advising a fellow member of the conspiracy not to come to Fajardo due to police presence.  Further, the Magistrate Judge noted that Defendant was allegedly involved in using straw buyers for purchasing high-end luxury vehicles to launder drug money. Id.

On February 3, 2015, Defendant filed a *Motion for De Novo Review* (Docket No. 138) of the Magistrate Judge's determination arguing, *inter alias*, that the Magistrate failed to hold the government to its statutory burdens of proof.  Defendant further argued that there is insufficient evidence to establish by clear and convincing evidence that Gomez presents a danger to the community.  Additionally, Defendant contends that the Magistrate Judge erred in permitting the United States to proceed by proffer as opposed to live testimony.

On February 23, 2015, the Court held a *De Novo Hearing* (Docket Nos. 202) where the Court heard the arguments from defense counsel as to the possible conditions of bail. The testimony of Carlos Gonzalez, Esq., was heard on behalf of defendant. The SAUSA presented the arguments as to defendant's role and presumption for risk to flight and danger to the community. The Court, upon listening to the parties' final arguments, held in abeyance Defendant's bail request.

## II. BAIL REVIEW UNDER THE BAIL REFORM ACT

Where, as here, a magistrate judge's detention order is contested, the Court must consider the matter *de novo* under the guidelines set forth by the Bail Reform Act at 18 U.S.C. §3142.[1] United States v. Tortora, 922 F.2d 880, 883 n.4 (1st Cir. 1998); *see also* United States v. Torres-Rosario, 600 F.Supp.2d 327, 330 (D.P.R. 2009). The Court proceeds accordingly.

The Bail Reform Act sets forth four factors which the Court must weigh in determining whether pretrial detention is

---

[1] The Court remains cognizant that Felipe Gómez Encarnación enjoys the presumption of innocence at this stage of the proceedings. *See* Bull v. City & County of San Francisco, 595 F.3d 964, 996 (9th Cir. 2010) ("detainees still enjoy the presumption of innocence"). The presumption of innocence means that the fact "[t]hat an individual is charged with a crime cannot, as a constitutional matter, give rise to any inference that he is more likely than any other citizen to commit a crime if he is released from custody. Defendant is, after all, constitutionally presumed to be innocent pending trial, and innocence can only raise an inference of innocence, not of guilt." United States v. Scott, 450 F.3d 863, 874 (9th Cir. 2006). Moreover, the Bail Reform Act explicitly provides that "[n]othing in this section shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j). Although a pre-trial Defendant benefits from the presumption of innocence, detention may nevertheless be warranted as "[t]he government's interest in preventing crime by arrestees is both legitimate and compelling." United States v. Salerno, 481 U.S. 739, 749 (1987).

3

warranted. They are: "(1) the nature and circumstances of the offense charged; (2) the weight of the evidence as to guilt or innocence; (3) the history and characteristics of the accused, including past conduct; and (4) the nature and gravity of the danger posed by the person's release." Tortora, 922 F.2d at 884 (citing the factors outlined at 18 U.S.C. §3142(g)(1)-(4)); *see also* United States v. Gines Perez, 152 F.Supp. 2d 137, 148 n.13 (D.P.R. 2001); Torres-Rosario, 600 F.Supp. 2d at 330.

However, under the Bail Reform Act, where a criminal defendant is charged with crimes that reach a predetermined threshold,[2] including those with which Defendant is charged in

---

[2] Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed—

(A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46;

(B) an offense under section 924(c), 956(a), or 2332b of this title;

(C) an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed;

(D) an offense under chapter 77 of this title for which a maximum term of imprisonment of 20 years or more is prescribed; or

(E) an offense involving a minor victim under section 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425 of this title.

18 U.S.C. § 3142(e)(3).

the instant case,[3] a presumption arises "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. §3142(e)(3); *see also* Gines Perez, 152 F.Supp. 2d at 147. The presumption, therefore, is that the criminal defendant poses a risk both of flight prior to prosecution and a risk of danger to the community. United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985), *partially abrogated on other grounds by* United States v. O'Brien, 895 F.2d 810, 814 (1st Cir. 1990)(abrogating Jessup only as to the standard of appellate review)); *see also* Ginez Perez, 152 F.Supp. 2d at 147. "We apply a preponderance of the evidence standard to the proof pertaining to flight risk, but clear and convincing evidence must be introduced to support the conclusion that a defendant's detention prior to trial is necessary to ensure the safety of the community." Torres-Rosario, 600 F. Supp. 2d at 330 n.4 ; *See* United States v. Patriarca, 948 F.2d 789, 793 (1st Cir. 1991)(preponderance of the evidence to establish "risk of flight"); 18 U.S.C. § 3142(f)(requiring satisfaction of a "clear and convincing" standard of proof as to dangerousness to the community as upheld by the U.S. Supreme Court in United States v. Salerno, 481 U.S. 739, 750 (1987)).

---

[3] The defendant is charged with a serious drug trafficking crime and of possession with intent to distribute enormous quantities of drugs under 21 U.S.C. §341(a)(1) and extremely high quantities of money laundering on behalf of the drug organization under 18 U.S.C. §1956(h).

5

Once triggered in the cases that reach the rebuttable presumption of "danger to the community" and "flight risk," the defendant may rebut the presumption by producing "conflicting evidence" to undercut the legislative purpose of the presumption as to the risks of danger and flight. Id. (outlining what is known as the "intermediate position").[4] The defendant is required to produce "some evidence" to the contrary. O'Brien, 895 F.2d at 815. However, it is not merely any evidence that destroys the presumption since the "bursting bubble theory" was expressly rejected by then Circuit Judge of the First Circuit Court of Appeals Steven Breyer, in United States v. Jessup, 757 F.2d at 382-383. The "intermediate position" adopted in Jessup requires a defendant to produce "conflicting evidence" as to "danger" and "flight"[5] and then the Court "determine[s] on which side the evidence preponderates." Jessup, 757 F.2d at 383 (citing Wright v. State Accident Insurance Fund, 289 Ore. 323, 613 P.2d 755, 759-60 (1985)). The Court must weigh any evidence proffered by the defendant against the presumption and evidence produced by the government in order to determine whether detention without bail is appropriate. Ginez Perez, 152 F.Supp. 2d at 147 (citing Jessup, 757 F.2d at 384); *see also* United

---

[4] Jessup, 757. F. 2d at 383 (noting that "the House of Judiciary adopted this sort of 'intermediate position' . . . .").

[5] Jessup, 757. F. 2d at 383 (citing the theory of Hecht and Pinzler, Rebutting Presumptions: Order Out of Chaos, 58 B.U.L. Rev. 527 (1978)).

6

States v. Villanueva-Rodriguez, 190 F.Supp. 2d 257, 259 (D.P.R. 2002). Thus, while the burden of persuasion always rests with the United States, the burden of production shifts to the defendant once the presumption is activated. *See* Jessup, 757 F.2d at 384.

The presumption has a "significant practical effect." Jessup, 757 F.2d at 384.[6] The presumption does not shift the burden of persuasion to the defendant, because the government retains the burden throughout. However, once the presumption is triggered, the defendant is required to carry the burden of production. United States v. Jessup, 757 F.2d 380-384. The presumption created is that ". . . no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten or more years is prescribed in the Controlled Substances Act, (21 U.S.C. 801 et seq.)" 18 U.S.C.

---

[6] In United States v. O'Brien, 895 F.2d at 814, the Circuit Court abrogated Jessup as to the standard of appellate review. The First Circuit in O'Brien adopted the appellate standard of review enunciated in United States v. Bayko, 774 F. 2d 516, 520 (1st Cir. 1985), which is "an independent review...tempered by deference to the district court's firsthand judgment of the situation" rather than the clearly erroneous or other highly deferential standard utilized in Jessup, 757 F. 2d at 387-388, United States v. Fortna, 769 F. 2d 243, 250 (5th Cir. 1985), United States v. Chimurenga, 760 F. 2d 400, 405 (2d Cir. 1985), and United States v. Williams, 753 F. 2d 329, 333 (4th Cir. 1985). O'Brien, however, reiterates and follows the standard of burden shifting, presumption and of preponderance of the evidence of Jessup stated herein applicable for bail determinations at District Court level. 895 F.2d at 815.

7

3142(e). The presumption created is, therefore, of "flight risk" and "danger" to the community. Jessup, 757 F.2d at 381.

Even after a defendant has produced evidence to rebut the presumption as to both "danger" to the community and risk of "flight," "the presumption does not disappear, but rather retains evidentiary weight - the amount depending on how closely defendants' case resembles the Congressional paradigm, Jessup, 757 F.2d at 387 - to be considered with other relevant factors." United States v. Palmer-Contreras, 835 F.2d 15, 17 (1st Cir. 1987). Finally, in making its final determination after receiving the rebuttal pursuant to §3142 (g), the judicial officer must consider among other statutory factors "the nature and circumstance of the offense," "weight of the evidence," "history and characteristics of the person including . . . character, physical and mental condition, family history . . . past conduct" and the "danger posed to the community" by his release. Id.

### III. ANALYSIS

As an initial matter, the Court states that offenses which carry a maximum punishment of ten years or more activate the rebuttable presumption of detention without bail. *See* 18 U.S.C § 3142(e)(3)(C). Gomez is charged with a violation of 21 U.S.C. § 841(a)(1), which carries a maximum prison term of ten years or more, as the quantity of drugs alleged in the complaint

activates the presumption. Thus, the rebuttable presumption of detention without bail applies in the instant case. Further, the proffer of the United States in the hearing before the District Court reinforces the presence of the rebuttable presumption.[7]

As stated previously, the instant case is governed by the presumption of detention set forth under the Bail Reform Act based on possession of narcotics with intent to distribute. 21 U.S.C. § 841(a)(1). The Court must, therefore, analyze the statutory factors required under the law. The Court proceeds in seriatim fashion to examine the statutory criteria at 18 U.S.C. § 3142(g)(1),(2),(3),(4) and then proceeds to conclude whether the evidence preponderates towards detention or bail.

The first two factors, which the Court will consider in conjunction, pertain to the nature and circumstances surrounding the offense and the weight of the evidence as to guilt or innocence. Thus, it is imperative for the Court to analyze the nature and circumstances surrounding the Defendant's arrest and the evidence obtained by the arresting officers at Defendant's residence.

In the case at bar, Defendant is charged with possession of narcotics with the intent to distribute and money laundering,

---

[7] Parties may offer proffers at the bail procedures pursuant to the case of United States v. Acevedo Ramos, 255 F.2d 203, 208 (1stCir. 1985).

*charges which are unquestionably quite serious and dangerous in nature*. Particularly, Defendant has been deemed a manager within the drug organization based on his access to substantial amounts of cash and management of approximately 3,500 kilograms of drugs.

Defendant has been identified by a witness with personal knowledge of the matter as an owner of a drug point in Vieques. A witness also proffered to having seen Defendant unloading a truck full of drugs into one of the boats tied to the conspiracy. Defendant has been also been recorded speaking to other members of the organization about moving drugs on the ferry from Vieques, the area controlled by the Defendant's organization. On February 3, 2012, Gomez was recorded explaining how to load and transport drugs on the ferry from Vieques to Fajardo. Several weeks later, on April 11, 2012, Gomez was recorded in a phone conversation advising Jose Silva, a fellow member of the conspiracy and a co-Defendant of the case, not to come to Fajardo because of an increased police presence in the area. Furthermore, Defendant was involved in cash transactions to purchase luxury vehicles with values of $112,000 and $365,000 through straw buyers in order to launder money for the organization.

The third factor which the Court must consider pertains to the history and characteristics of the accused, including his

past conduct, ties to the community, financial resources, and employment.  This factor weighs most heavily against the accused as he has access to large sums of cash, has drug-related ties outside of Puerto Rico, and is self-employed as a cock-fighter arena owner but has never filed income tax related thereto.  Furthermore, his managerial role in the conspiracy tasked him with making critical decisions.

Turning to the fourth and final factor in our analysis, the nature and gravity of the danger posed by the person's release, the Court finds by clear and convincing evidence that Defendant poses a flight risk should bail be granted.  *See* Salerno, 481 U.S. at 750.  Not only does Gomez's have means and motivation to flee the jurisdiction, but his direct ties to the upper members of the conspiracy and his managerial role within the organization poses a significant threat to the community.  Further, and most critical, the defendant deals with large amounts of drugs and hence has direct access to foreign contacts and has the ability to flee.  *See* U.S. v. Jessup, 757 F.2d at 384 ("flight to avoid prosecution is particularly high among persons charged with mayor drug offenses").

Accordingly, the Court agrees with Magistrate Judge Lopez's determination that Defendant poses a safety threat to the community by "clear and convincing" evidence under Salerno, 481

U.S. at 750. Therefore, the Court **determines that Defendant is to be held without bail until trial.**

### IV. CONCLUSION

After carefully examining all the evidence and the pertinent factors, the Court finds that the Defendant has failed to rebut the presumption of presenting a danger to the community. Defendant cannot make a reasonable assurance that he can satisfy the criteria of "community safety" as required under Tortora, 922 F.2d at 892. It is evident to the Court that, based on the government's proffered evidence detailed above, Defendant poses an obvious risk of flight and is a danger to the community. Hence, Defendant Felipe Gomez-Encarnacion is hereby ordered to remain **DETAINED WITHOUT BOND** pending trial.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 14th day of April, 2015.

s/ Daniel R. Dominguez

DANIEL R. DOMINGUEZ
U.S. DISTRICT JUDGE